OPINION OF THE COURT
Martin B. Stecher, J.
Defendant, Jack Newfield, moves for an order disqualifying plaintiff’s law firm, Coudert Brothers, because of an alleged conflict of interest. The motion is made more than two years after the commencement of the action.
The defendant Newfield’s motion is grounded upon a lawyer’s obligation to "preserve the confidences and secrets of a client” (Code of Professional Responsibility, Canon 4) and to "avoid even the appearance of professional impropriety” (Code of Professional Responsibility, Canon 9; Cardinale v Golinello, *823 55 AD2d 898). It is, of course, the obligation of the trial court to supervise the Bar and enforce those canons (cf. Rotante v Lawrence Hosp., 46 AD2d 199; Edelman v Levy, 42 AD2d 758; Motor Mart v Saab Motors, 359 F Supp 156).
The action, brought by Mary Perot Nichols, a former senior editor of the defendant periodical, Village Voice, Inc. (Voice), arises out of Nichols’ discharge from that position. Her first three causes of action are pleaded against the Voice only, and seek severance pay, travel expenses and damages for breach of privacy (Civil Rights Law, §§ 50, 51).
The fourth cause of action is pleaded against the Voice, Voice editor Thomas B. Morgan, Newfield, and another publication, the Villager. It sounds in defamation and alleges that following the plaintiff’s discharge by Morgan, Newfield, with Morgan’s consent and on behalf of the Voice, told a reporter for the Villager that plaintiff was fired for professional incompetence. Newfield is purported to have said that the plaintiff was discharged "because she wasn’t writing good stuff in the last few years and had developed serial obsessions on Scotto, Goldman and Common Cause” and that "Mary [Nichols] talks like a member of the Labor Committee. She has a paranoid conspiratorial idea that Rocky [the late Vice-President Rockefeller] runs the Voice.” The fifth cause of action is pleaded against the Voice, Morgan, Hamill and the Villager, and parallels the fourth cause of action.
Newfield’s prior relationship to Coudert Brothers stems from the case of Rinaldi v Holt, Rinehart & Winston (42 NY2d 369). There, a Justice of the Supreme Court brought an action against Newfield and his publisher for defamation. In his complaint, that plaintiff charged "that defendants maliciously published false, scandalous and defamatory matter by which defendants meant 'that the plaintiff was and is a corrupt, venal, biased, incompetent and unqualified Justice of the Supreme Court of the State of New York who should be removed from office.’ ” (Rinaldi v Holt, Rinehart & Winston, supra, pp 374-375.)
Coudert Brothers did not represent Newfield in the Rinaldi case. They represented the publisher, Holt, Rinehart & Winston, Inc. Newfield urges disqualification, however, because, says Newfield, his attorney and Holt’s attorney "established a joint defense as to our liability; that Justice Rinaldi was a public official and that the statements complained of were true and were not made with actual malice * * * A critical *824 element of our joint defense was the care with which I investigated Justice Rinaldi’s career and various charges and accusations made against him and my overall reputation as a careful investigative journalist.” Newfield goes on to allege that he had "numerous lengthy discussions with Kovner [Newfield’s attorney at the time] and Keene [the Coudert Brothers associate thoroughly involved in both the Rinaldi and the instant cases] in which we discussed in great detail my work habits, my past, my view on journalism generally and other confidential matters. Holt, the Voice and I were defending against a common enemy and I regarded both Keene and Kovner as my lawyers. Accordingly, I imparted confidential information to both Keene and Kovner with the expectations that this information would help all of us previal in the Rinaldi action and that such information would remain confidential.”
The disqualification of an attorney by reason of conflict of interest will not be denied solely because there is no actual attorney-client relationship between the parties. A "fiduciary obligation or an implied professional relation” may exist in the absence of a formal attorney-client relationship (Westinghouse Elec. Corp. v Kerr-McGee Corp., 580 F2d 1311, 1319). It is clear that where an attorney receives confidential information from a person who, under the circumstances, has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidence irrespective of the absence of a formal attorney-client relationship.
As the plaintiff points out, no confidences whatever are detailed by Newfield; but, of course, none need be. As was said in the seminal case of T. C. Theatre Corp. v Warner Bros. Pictures (113 F Supp 265, 269): "To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule. It would defeat an important purpose of the rule of secrecy — to encourage clients fully and freely to make known to their attorneys all facts pertinent to their cause. Considerations of public policy, no *825 less than the client’s private interest, require rigid enforcement of the rule against disclosure.” The test, rather, is that the person seeking disqualification, "need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer’s duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.” (T. C. Theatre Corp. v Warner Bros. Pictures, supra, pp 268-269.) The "substantially related” test has been widely adopted (see Westinghouse Elec. Corp. v Gulf Oil Corp., 588 F2d 221; Silver Chrysler Plymouth v Chrysler Motors Corp., 518 F2d 751; Emle Inds. v Patentex, Inc., 478 F2d 562; Richardson v Hamilton Int. Corp., 469 F2d 1382).
Other courts, adhering to the "substantially related” test, have refined the standards of inquiry. Thus, it has been suggested that the court must balance three competing interests: the plaintiffs interest in freely selecting counsel of his choice, the defendant’s interest in having a trial free from risk of disclosure of confidential information and the public’s interest in the scrupulous administration of justice (Hull v Celanese Corp., 513 F2d 568). In Westinghouse Elec. Corp. v Gulf Oil Corp. (supra, p 225), it was said: "Essentially then, disqualification questions require three levels of inquiry. Initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.” As the Court of Appeals of the Second Circuit said in Emle Inds. v Patentex, Inc. (supra, p 571): "The dynamics of litigation are far too subtle, the attorney’s role in that process is far too critical, and the public’s interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer’s representation in a given case. These considerations require application of a strict pro *826 phylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client’s disadvantage.”
In short, "[djoubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification” (Westinghouse Elec. Corp. v Gulf Oil Corp., supra, p 225).
Having said all of that, however, we must nonetheless recognize that in modern day litigation motions to disqualify counsel are utilized as weapons and it is the court’s obligation to prevent abuse of such motions where no reasonable ground exists for disqualification (cf. Ceramco, Inc. v Lee Pharms., 510 F2d 268). It should, of course, require no citation to conclude that there is no ethical problem in bringing suit against a former client where the representation of the former client and the present suit are totally unrelated. (United States v Standard Oil Co., 136 F Supp 345.)
As indicated above, we are not informed of any confidences which Newfield is alleged to have revealed to the attorney Keene; although attorneys and witnesses on both sides have provided us with copious — and conflicting — affidavits asserting in conclusory terms that such information was or was not given. I find no need to make a factual election between those competing contentions.
It is obvious that there are no "matters embraced within the pending suit [which] * * * are substantially related to” the Rinaldi suit (T. C. Theatre Corp. v Warner Bros. Pictures, 113 F Supp 265, 268, supra). Certainly, the truth or falsity of Newfield’s charges against Rinaldi are unrelated to the Nichols complaint. What Newfield calls related matters are "my work habits, my past, my views on journalism generally * * * my methods and the care with which I practice my trade”. While these may have been involved in an action arising out of a series of published articles, they are not "substantially related” to Newfield’s opinions of the plaintiff expressed in an interview conducted by a reporter for another newspaper.
Little need be said of the delay in making this motion. Laches are asserted and demonstrated; had the question of disqualification been a close one, it would have tipped the balance against disqualification (Emle Inds. v Patentex, Inc., supra, p 574). However, the issue is not close. I find that there is no basis from which it may reasonably be concluded that Keene or Coudert Brothers, by their representation of Nichols, *827 will fail to preserve the confidences and secrets of a "client” (Code of Professional Responsibility, Canon 4); and their representation of Nichols has no appearance of professional impropriety (Code of Professional Responsibility, Canon 9). The motion to disqualify the plaintiff’s attorneys is denied.
[Portions of opinion omitted for purposes of publication.]