BENNETT SILVERSHEIN ASSOCIATES, Bennett Silvershein, Joan Wolfson, and Marilyn E. Silvershein, Plaintiffs,

v.

Jay FURMAN, individually and as Executor of the Estate of Morris Furman, Barbara Murray, Individually and as Executrix of Estate of Morris Furman, Gail Furman, Robert Murray, Joseph Ades, Albert Ades, Robert Ades, Michael Ades, Walter J. Samuels, Barjay Associates, Barjay Management Inc., Realty Investors Development Corp., R.D. Management Corp., Hyannis Asso-

ciates, Twenty–First AP # 9 Corp., SSF Hyannis Associates, Somerville S.C. Associates, Jay–Bob Associates, Chambersburg Associates, Edgewood Associates, SSB Realty Associates, Twenty–Third Glasgow Corp., C & A Associates, St. Albans Associates, and Twenty–Sixth St. Albans Corp., Defendants.

No. 91 Civ. 3118 (MBM).

United States District Court, S.D. New York.

Oct. 29, 1991.

Alan Levine, Celia G. Barenholtz, and Sheryl Silver, Kronish, Lieb, Weiner & Hellman, New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs Bennett Silvershein Associates, Bennett Silvershein, Joan Wolfson, and Marilyn E. Silvershein move to disqualify Kronish, Lieb, Weiner & Hellman from acting as trial counsel for defendants Jay Furman, Joseph Ades, Albert Ades, Robert Ades, Walter Samuels, several other family members of the foregoing individuals, and several partnerships and corporations controlled by the individual defendants. Ten years before the filing of this civil RICO action with pendent state law claims, Bennett Silvershein ("Silvershein") briefly consulted Joseph Hellman, a name partner at Kronish Lieb, about certain matters tenuously related to the matters at issue in this action. For reasons set forth below, plaintiffs' motion is denied.

### I.

Silvershein met with Hellman in October 1981 at the suggestion of a friend (Silvershein Aff. ¶ 10), because he was having "problems" with his investments in two real estate partnerships (Chambersburg and St. Albans) sponsored and/or controlled by Morris Furman ("Furman") and his associates. (Silvershein Rep. Aff. ¶ 13) These partnerships are two of the four real estate partnerships whose management and performance generated the dispute underlying this action. Each of the four partnerships owns a shopping center. (Verified Compl. ¶ 37)

Plaintiffs allege that defendants wrongfully diluted their partnership interests through a series of fraudulent loans and transfers from the four partnerships to other entities controlled by the defendants. Plaintiffs allege that defendants thus engaged in "schemes to defraud, self-dealing, and wrongful manipulation of the business dealings" of the four partnerships. (Verified Compl. ¶ 2; Silvershein Aff. ¶ 8) The overlap, however, between these allegations and the substance of the Hellman–

Stephen M. Charme, Liebman, Charme & Oppenheimer, Marvin Levine, Stadtmauer, Bailkin, Levine & Masyr, New York City, for plaintiffs.

Silvershein meeting is at most uncertain. Not only did the bulk of the acts alleged in the Complaint occur after 1981, but the acts alleged to have occurred before 1981 are claimed to have been fraudulently concealed by defendants. Therefore, by the Complaint's own terms, none of the acts alleged in the Complaint could have been discussed at the 1981 meeting.

Silvershein ultimately did not retain Kronish Lieb, nor did he have any contact with Kronish Lieb beyond the single consultation. Neither did Silvershein sue Furman and his associates in 1981. In fact, ten years elapsed before Silvershein started this action, alleging fraud, breach of fiduciary duty, and violations of RICO, in April 1991. Hellman has submitted an affidavit stating that he cannot recall meeting with Silvershein (Hellman Aff. ¶ 3); he asserts that he can confirm such a meeting only by a notation in his 1981 lawyer's diary and by the presence of client numbers. (Hellman Aff. ¶¶ 4, 6) Kronish Lieb apparently assigns such numbers whenever a prospective client meets with any member of the firm. (Hellman Aff. ¶ 6) Further, Alan Levine ("Levine"), the only lawyer on defendants' Kronish Lieb team who even worked for the firm in 1981, was then an associate in a different department from Hellman's. Hellman avers that he would have had no reason, in the normal course of business, to have discussed the Silvershein meeting with Levine. (Hellman Aff. ¶ 11) Nevertheless, Silvershein contends that during his consultation with Hellman he disclosed confidential information that creates a fatal conflict of interest requiring Kronish Lieb to be disqualified. I disagree.

## II.

■ Motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are "often interposed for tactical reasons" and result in unnecessary delay. *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985) (collecting cases). The Second Circuit has "indeed been loathe to separate a client from his chosen attorney.... The delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance...." *Bohack Corp. v. Gulf & Western Indus., Inc.*, 607 F.2d 258, 263 (2d Cir.1979). Thus, although doubts should be resolved in favor of disqualification, *Cheng v. GAF Corp.*, 631 F.2d 1052, 1059 (2d Cir.1980), *vacated on other grounds and remanded*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981), the party seeking disqualification must carry a "heavy burden," *Vegetable Kingdom, Inc. v. Katzen*, 653 F.Supp. 917, 922 (N.D.N.Y.1987), and must meet a "high standard of proof" before a lawyer is disqualified. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983) (citing *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978)); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 1989 WL 49368, at *4, 1989 U.S.Dist. LEXIS 4693, at *11 (S.D.N.Y. May 1989).

■ Generally, an attorney may not knowingly reveal a client confidence if to do so would disadvantage that client. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 n. 2 (2d Cir.1977); *see also Model Code of Professional Responsibility* EC 4–5, 4–6 (1980) ("A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client...."; "The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment."). Therefore, the *Model Rules of Professional Conduct* prescribe that "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client...." *Model Rules of Professional Conduct* Rule 1.9(a) (1983). Among other reasons, this model rule was designed to "give the court confidence that a lawyer will not use unfairly the secrets gained in prior employment." *Weider*, 1989 WL 49368, at *2, 1989 U.S.Dist. LEXIS 4693, at *7.

■ This Circuit has reviewed attorney disqualification motions under Canon 4 of the *Model Code of Professional Responsibility. See, e.g., Cheng v. GAF Corp.*, 631 F.2d 1052, 1059 (2d Cir.1980), *vacated on other grounds and remanded*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981)); *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976). Under Canon 4, courts apply a three-part test to determine whether an attorney should be disqualified:

(1) is the moving party a former client of the adverse party's counsel;

(2) is there a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit; and

(3) did the attorney whose disqualification is sought have access to, or was he likely to have had access to, relevant privileged information in the course of his prior representation of the client?

*See Evans v. Artek Systems Corp.*, 715 F.2d 788, 719 (2d Cir.1983) (citing *Cheng*, 631 F.2d at 1059); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570–71 (2d Cir.1973); *Keoseian v. Von Kaulbach*, 707 F.Supp. 150, 151 (S.D.N.Y.1989); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D.N.Y.1953) (Weinfeld, J.). When applying this test, courts must look with "painstaking" care at the facts, *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955), maintaining a balance between a party's right to preferred counsel and the need to "preserve the integrity of the adversary process." *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). *Cf. Emle*, 478 F.2d at 564–65 (referring to the "need to maintain the public's trust in the integrity of the Bar").

A. *Attorney Client Relationship*

The first element of the test for disqualification requires plaintiffs to demonstrate that they were formerly clients of Kronish Lieb. Defendants concede that this element is present. (Def.Mem. at 7) Courts have found that "an attorney-client relationship ... exist[s] when the party divulg-

ing confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." *Trinity Ambulance Service, Inc. v. G & L Ambulance Services, Inc.*, 578 F.Supp. 1280, 1283 (D.Conn.1984).

■ Moreover, an attorney client relationship can be established even if the attorney ultimately is not retained. As the Court of Appeals for the Seventh Circuit has written, "The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." *Westinghouse Elec. Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *accord Seeley v. Seeley*, 129 A.D.2d 625, 627, 514 N.Y.S.2d 110, 112 (1987); *Model Code of Professional Responsibility* EC 4–1.

B. *Substantial Relation*

Ten years after the fact, the substance of Silvershein's meeting with Hellman is not entirely certain. Plaintiffs have alleged that Hellman and Silvershein discussed "the very same parties, the very same real estate transactions, and the very same kinds of wrongdoing" as underlie the present action. (Pl.Rep.Mem. at 6) On the other hand, defendants argue that the subject of the Hellman–Silvershein meeting could not be related substantially to the subject of the current litigation because most of the acts alleged in the Complaint occurred after 1981. (*see* Def.Mem. at 8, 11)

■■ This Circuit has applied the "substantially related" prong strictly, requiring the moving party to demonstrate that the relationship between the two actions is "patently clear," or that the actions are "identical" or "essentially the same." *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir.1978) (disqualifying attorney because he had learned during prior representation about plaintiff's lading procedures, which were in question in in-

stant representation). *Cf. Emle,* 478 F.2d at 571 (disqualifying plaintiffs' attorney who had previously represented defendants because both actions dealt with nature and scope of Burlington's control of Patentex). Although, in the abstract, the alleged substance of the Hellman–Silvershein meeting appears to be closely related to the allegations at hand, a closer inspection reveals that it is not sufficiently related to require disqualification. In the context of attorney disqualification motions, an earlier consultation should be considered sufficiently related to a later case to warrant disqualification only to the degree that the information the client disclosed in that earlier consultation is useful in the later case. Information can be useful even if the two matters are not identical. However, the attorney must gain some advantage not otherwise available but for the prior confidential relationship, even if that advantage goes only to background matters.

Usefulness can be ascertained by comparing the information alleged to have been imparted in the prior representation with the allegations in the current dispute. If the two are congruent, then the previously acquired confidential information is at least potentially useful. *See Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980) (finding substantial relatedness measured by "the allegations in the complaint and by the nature of the evidence that would be helpful in establishing those allegations"); *Emle,* 478 F.2d at 572 (finding that "examination of the pleadings alone in each proceeding" gave rise to inference of substantial similarity); *see also Motor Mart Inc. v. Saab,* 359 F.Supp. 156 (S.D.N.Y.1973) (disqualifying plaintiff's attorney because he had previously served as defendant's counsel in same type of suit and was thereby familiar with defendant's business methods and other confidential information).

Plaintiffs here fail to meet the "substantially related" prong. At his meeting with Hellman, Silvershein claims he discussed the following difficulties he was having with his Furman investments: "money due and owing to plaintiffs was not being paid," "financial information to which plaintiffs were entitled was being withheld," and "the affairs of Chambersburg Associates and St. Albans Associates ... were being mishandled." (Silvershein Aff. ¶ 9) Even accepting these assertions, plaintiffs have failed to demonstrate a sufficient similarity between the substance of the 1981 meeting and the current litigation to establish that Kronish Lieb retains useful information from that meeting.

The Complaint alleges that defendants deprived plaintiffs of their rightful partnership interests in the four partnerships by manipulation and self-dealing with respect to lease transactions, loans, transfers, and sales. (Verified Compl. ¶¶ 82, 131, 176, 212, 217–18) Defendants, according to the Complaint, both effected and concealed this wrongdoing by fraudulent statements and omissions. (Verified Compl. ¶¶ 77–78, 83–84, 126–27, 132–34, 177–78, 212–14, 219–20) However, as stated above, the only events alleged in the Complaint that had occurred by 1981 were acts that Silvershein could not possibly have discussed with Hellman because the Complaint alleges that those acts were fraudulently concealed by defendants. (Verified Compl. ¶¶ 125–27, 212–14) Moreover, plaintiffs' assertions are further attenuated by the fact that the two client numbers opened by Kronish Lieb for Silvershein were not litigation numbers. Rather, one was a general number entitled "Morris Furman" and the other was a trusts and estates number. (Hellman Aff. ¶¶ 6, 8–9) Although, in some instances, an attorney's disqualification is warranted when the allegations in the two matters are merely similar, this is not such a case. In those instances, disqualification is predicated on the extensiveness of the attorney's exposure during the prior representation to particular practices that are similar to those underlying the subsequent litigation. *See, e.g., Motor Mart Inc. v. Saab,* 359 F.Supp. 156 (S.D.N.Y.1973). Here, a one hour consultation that occurred ten years ago is the sole contact between Silvershein and Kronish Lieb. Moreover, Hellman has asserted that he cannot even remember meeting with Silvershein, that Kronish Lieb would have destroyed any documents pertaining to the meeting sometime within the

last seven years (Hellman Aff. ¶ 10), and that he would have had no reason to discuss the case with Levine. In sum, no reasonable possibility exists that Kronish Lieb retains useful information from Silvershein about this case.

### C. Access to Confidential Information

Because, plaintiffs have failed to satisfy the substantial similarity requirement, I address Kronish Lieb's access to confidential information only briefly. As to this third prong, the Second Circuit has looked to whether the disputed attorney's involvement in the prior case "was such that he would have had access to relevant privileged information." *Government of India*, 569 F.2d at 740. Because of the attorney client relationship between Hellman and Silvershein, established under the first prong of the disqualification test, I must assume that Hellman had access to Silvershein's confidential information. As the Second Circuit has held:

> It is well established that a court may not inquire into the nature of the confidences alleged to have been revealed to the tainted attorney. To require proof of access to privileged information would "put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether."

*Cheng*, 631 F.2d at 1056 (quoting *Government of India*, 569 F.2d at 740).

Therefore, Hellman certainly would be disqualified from representing defendants. As a result, all members of Kronish Lieb likewise would be disqualified. Disciplinary Rule 5–106(D) of the Code of Professional Responsibility provides: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." *Accord Rules of Professional Conduct* Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall

knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] ... 1.9...."); *see also Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir.1976); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978).

The Second Circuit has not addressed directly the question whether the same test applies to cases in which the disqualified attorney has remained at the same firm where the prior representation took place and to cases in which the disqualified attorney has moved to a new firm. However, I need not make that determination here because of my finding that plaintiffs failed to satisfy the substantial similarity prong. Because this is not a situation where the tainted attorney has moved to a new firm, the bright line disqualification rule would apply, imputing to all members of Kronish Lieb knowledge of the confidential matters disclosed to Hellman. *See, e.g., Trone v. Smith*, 621 F.2d 994, 999 (9th Cir.1980); *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983); *but compare Government of India*, 569 F.2d at 740–41 (Mansfield, J., concurring) (arguing that basis for majority's finding of access to confidential information on part of attorney and his present law firm was fact based finding of attorney's substantial involvement in prior litigation as an associate at another firm); *Cheng*, 631 F.2d at 1056 (recognizing that inference of access to confidential information is rebuttable); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751 (2d Cir.1975), *overruled on other grounds, Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir.1980), *vacated*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981) (affirming district court's finding that imputation rules should not automatically be applied to disqualify).

### III.

■ Just as Canon 4 does not provide a sufficient basis for Kronish Lieb's disqualification, neither does Canon 9 warrant disqualification. Canon 9 provides that a lawyer has a duty "to strive to avoid not only

professional impropriety but also the appearance of impropriety." *Model Code of Professional Responsibility* EC 9–6. The crucial question here is what impropriety "appears" from Kronish Lieb's continued representation of defendants. If the only "appearance of impropriety" is a violation of Canon 4 that has already been found devoid of substance, it would be downright perverse to hold that what has been held not to exist nonetheless "appears." In fact, the "question-begging" nature of the term "appearance of impropriety," *Model Rules of Professional Conduct* Rule 1.9, has resulted in the Model Rules's complete elimination of any such proscription. Therefore, Canon 9 "should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules." *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1294 (2d Cir.1975). *Cf. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1361 (9th Cir.1981), *cert. denied sub nom., California v. Standard Oil Co.,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (a disqualification solely on basis of Canon 9 must result only from glaring improprieties). Canon 9 does not confer a roving moral commission to disqualify attorneys based on conduct specifically treated in other Canons. Accordingly, Canon 9 does not require Kronish Lieb's disqualification.

For the reasons set forth above, the motion is denied.

SO ORDERED.