Filed 09/11/24

VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00261

| Cris O'Donnell et al v. Hope Clough et al |
|---|

# ENTRY REGARDING MOTION

Title: Motion for Special Assignment; Motion to Stay; Motion Motion for Special Assignment; Denied on the record; Motion For: for Disqualification of Plaintiff's Counsel (Motion: 12; 13; 14)
Filer: Hope A. Clough; Michelle Clough; Hope A. Clough; Michelle Clough; Daniel D. McCabe
Filed Date: May 02, 2024; May 16, 2024; May 16, 2024

The motions are DENIED.

The three pending motions in this matter came before the Court for a hearing on September 9, 2024. At this hearing, the Court conducted an evidentiary hearing and made partial rulings.

In regard to Plaintiff's Motion for a Special Assignment and Defendants' Motion for a Stay, the Court dismissed both motions from the bench. The Court took Defendants' Motion to Disqualify Plaintiff's Counsel under advisement.

After reviewing the party's' filing, the relevant law, and the evidence, the Court also denies Defendants' Motion to Disqualify Attorney Daniel McCabe from representing Plaintiff O'Donnell at the upcoming bench trial in this matter, which has been scheduled for October 7 and 8, 2024. Consistent with these rulings, the Court offers the following analysis.

*Motion for Special Assignment*

This motion was filed by Plaintiff in May of 2024 and sought the permanent assignment of Judge Mann to this case. Defendants opposed the motion. The motion was not considered prior to Judge Mann's rotation, and the present Court finds no compelling reason under either 4 V.S.A. § 22 (special assignment) or V.R.C.P. 16.1 (special assignments in complex matters) to grant the motion.

Given that Judge Mann has now rotated out of the assignment, the motion is also largely moot, and it is **Denied**.

*Motion for a Stay*

Defendants filed a motion in May 2024 seeking a stay of the proceedings for time to obtain legal counsel. The Court denies this motion. Defendants had one month prior to the motion and have had three months since the motion to find new counsel. They will continue to have the opportunity during the remaining time between now and trial to find and retain new counsel. This matter, however, has been pending for more than three years and has spawned related or derivative cases in the stalking and criminal dockets. Any further delay in this matter would be unfair to the parties who are entitled to a final judgment and would continue the risk that this unresolved dispute could create further problems for both sides. For these reasons, the Motion for a Stay is **Denied.**

*Motion to Disqualify Plaintiff's Counsel*

Defendants seek to disqualify Plaintiff's Attorney based on what they allege is a conflict of interest. This issue has been raised by Defendants for nearly two years with mention first being made as early as a status conference in June 2022.

Defendants filed the present motion in May of 2024, and they seek to disqualify Attorney McCabe based on an initial consultation that the Defendants had with Attorney McCabe's partner Steven Adler. The Court took evidence at the September 9, 2024 hearing on this motion and its basis, and the Court makes the following findings, which are, except where noted, uncontested.

Sometime in late 2018 or early 2019, Defendant Michelle Clough contacted Attorney Steven Adler, Attorney McCabe's law partner, in good faith for an initial consultation about the issues involved in the present litigation, namely the disputed existence, location, and extent of an easement involving the Cloughs and O'Donnell. Dr. Clough was interviewing Attorney Adler in pursuit of retaining counsel to represent her interests in the ongoing easement and boundary dispute she and her mother were having with their neighbor, O'Donnell.

This consultation took place over the phone. Attorney McCabe does not dispute this call, and he has reviewed Attorney Adler's notes from the phone call. Attorney McCabe states that he did not see any information in the notes that he would consider confidential. Attorney McCabe did not participate in this call, and he does not recall discussing the call or the Cloughs with Attorney

Adler. Dr. Clough claims that she shared confidential "strategy" information with Attorney Adler during this preliminary consultation.

Dr. Clough claims that she had a follow-up conversation with Attorney Adler and Attorney McCabe. This second conversation also took place by phone. Attorney McCabe has no memory of or notes from this second conversation. He found no notes for this second conversation in Attorney Adler's files. Dr. Clough was unsure of when this second conversation took place, but she believes that it was shortly after the first conversation. Again, Dr. Clough contends that she revealed certain confidential strategies in this conversation.

Dr. Clough does not recall if she sent any documents to Attorneys Adler or McCabe as part of this consultation. If she did, they would have been publicly available deeds, maps, and surveys. Attorney McCabe stated that his office had no documents associated with either of these meetings, but he could not state with any degree of certainty that they never received such documents.

After this second conversation, there was no further contact between Defendants and either Attorney Adler or McCabe. There was no retainer agreement. Neither Attorney Adler nor Attorney McCabe sought or accepted any payments from Defendants, and none was made. Neither Attorney Adler nor Attorney McCabe ever represented Defendants in any matters or performed any legal services for them. There is no evidence that any attorney-client relationship formed between Attorney Adler or Attorney McCabe and the Defendants. The evidence indicates that Defendants were "prospective clients" as that term is defined under the Vermont Rules of Professional Conduct 1.18(a).[1]

While Dr. Clough claims to have revealed confidential information to Attorney Adler and Attorney McCabe, she has not identified this material with any clarity, and she has not identified any misuse or disadvantage that has occurred or is likely to occur as a result of this information. While Dr. Clough may have held back on some of this information out of fear of disclosing what she understands to be her confidential strategy, the Court remains at a loss to understand what this information might be or the potential harm it would engender. The present case is a declaratory judgment action that is heading into its final stages, the discovery deadlines have largely passed, and any strategy for litigation will have to be enacted over the next few weeks as the parties present their

---

[1] Defining the term to mean, "[a] person who, in good faith, discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." Vt.R.P.C. 1.18(a).

evidence. The present case is effectively a boundary and easement dispute. Such cases are largely reliant on public records and the testimony of individuals. See, e.g., *DeGraff v. Burnett*, 2007 VT 95 (existence of an easement and boundary is determined by deeds and if there is ambiguity, then by extrinsic evidence). Neither of these are confidential sources, and the strategy of how to present this information is not likely to rise to the level of confidential information.[2]

Under Rule 1.18(c), the only time a lawyer must step down from representing a client against a "prospective client" is when (1) the client's interests are materially adverse to those of the prospective client in the same or substantially related matter, but (2) only if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter." Id. The disqualification of one lawyer under this rule extends to the lawyer's entire firm.

The key term here is the phrase "significantly harmful." While Rule 1.18 does not define the terms, it derives from model rules on which the Vermont Rules are based, and the term has been defined by the American Bar Association as "exquisitely fact-sensitive and -specific." *L.T. Pera, The Least Known Ethics Rule*, 47 No. 2 ABA Law Prac. 18, 19 (Mar/Apr 2021). Under this definition and the very mechanics of the Rule, not all information conveyed by a prospective client—even sensitive or confidential information—is "significantly harmful." Information that is likely to qualify as "significantly harmful" includes: sensitive personal information in a divorce case; premature possession of a client's financial information; a client's view on settlement in a tort case; or the terms that one client was willing to pay to purchase another's business. Id. In each of these cases, there is some element of continuing confidentiality and leverage that might yield an unfair result in settlement negotiations or would allow the attorney to exploit the legal process to bring undue and unfair pressure on an opposing party.

The following example illustrates the difference between a confidential information and "significantly harmful" information that a single fact can have. If a prospective client in a contract dispute told a lawyer that his business was no longer making the products that the plaintiff claims were defective, this information is unlikely to be "significantly harmful" as such information is likely to be disclosed in the course of discovery, and the disclosure of the information does not in and of itself pose harm to the Plaintiff. In contrast, if the prospective client told the lawyer that his

---

[2] As the Vermont Supreme Court has noted, the discovery and pre-trial process is designed to facilitate the exchange of such information as way of eliminating "trial by ambush" or trial by surprise. *State v. Stearns*¸159 Vt. 266, 271 n.2 (1992).

company was going to stop making the product next year, and that premature disclosure of this information would cause the company's stock to tumble, leaving the company without cash or resources, then the information would be "significantly harmful." As noted above, the harm analysis, while focused on the information, is primarily about the potential use of the information, and whether the potential use would cause "significant harm" to the prospective client. Id.

Looking to the present case, the facts do not demonstrate any evidence of significant harm that has or might result from any of the initial consultation conversations between Attorneys Adler or McCabe and Dr. Clough. Because this motion is framed as one for disqualification, the Court must look to the standards that Courts use when a party asserts a basis for disqualification of an opposing party. As the Court noted to the parties at the September 9th hearing, a party moving for disqualification of opposing counsel carries "a heavy burden, and must meet a high standard of proof before a lawyer is disqualified." *Cody v. Cody*, 2005 VT 116, ¶ 16 (quoting *First Hawaiian Bank v. Russel & Volkening, Inc.*, 861 F.Supp. 233, 237 (S.D.N.Y. 1994)). Such motions are generally disfavored. Id. While any doubts are to be resolved in favor of disqualification, the record must be established that raises such doubts. Id.

The Court must approach the issue of disqualification with specific facts and look to both the practicality of the situation as well as the precise facts at issue. *Cody*, 2005 VT 116, at ¶ 18 (quoting *Bieter Co. v. Blomquist*, 132 F.R.D. 220, 224 (D.Minn. 1990)). In this case, the evidence demonstrates that the parties had an initial consultation about possibly retaining Attorney Adler. This conversation ended at the preliminary stages. No attorney-client relationship was formed, no money was charged, and no services rendered. Dr. Clough's description and recitation of what was discussed is vague and generalized. While she characterizes parts of the conversation as involving sensitive issues or strategy, she offers no details. As a case that is first and foremost a public records case, the Court finds no inherent or likely grounds where such sensitivity is implied or likely to be found.

The standard under both Rule 1.18 and *Cody* requires tangible and specific evidence. This is particularly true in the present situation where the Court finds any interest stated by Dr. Clough must be balanced against the significant risk of prejudice to Plaintiff arising from this effort to remove their counsel of choice at this late hour. Based on this review, the Court finds no grounds to conclude that Dr. Clough transmitted "significantly harmful" information about her case to either Attorney Adler or Attorney McCabe. As such, the court finds and concludes that Defendants have

failed to sustain their burden to disqualify Attorney McCabe who may continue to represent Plaintiff O'Donnell in this matter. Defendant's motion to disqualify is **Denied.**

## ORDER

Based on the foregoing, Plaintiff's Motion for a Special Assignment is **Denied.** Defendant's Motion for a Stay is **Denied.** Defendants' Motion to Disqualify Attorney McCabe is **Denied.** The bench trial in this matter scheduled for October 7 and 8, 2024 shall proceed as scheduled, and the parties will be expected to follow the pre-trial schedule, which the Court re-states for clarity:

1) All exhibits shall be filed in Odyssey no later than October 4, 2024.

2) Parties shall exchange witness lists no later than October 4, 2024.

3) Any pre-trial motions shall be filed no later than October 1, 2024, with copies to the Court and to the opposing parties.

4) The Court will permit post-trial memoranda to be filed after the close of evidence, and the Court will work with the parties to create a reasonable filing schedule at the end of trial.

5) Parties are responsible for obtaining their own witnesses.

6) The parties are free to communicate and stipulate to any exhibits for the purpose of admissibility. Such agreements would not prevent parties from testifying or even disputing the meaning in any document but would simply be an acknowledgement that the document—whether a deed, survey, map, photograph, or letter—is what the parties purport it to be, a true and accurate copy.

Electronically signed on 9/11/2024 9:21 AM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge

Joyce E. Mc Keeman
Assistant Judge

The Hon Laurel Mackin
Assistant Judge