**ALCAN INTERNATIONAL LIMITED and Solvay Performance Chemicals, Division of Solvay Specialty Chemicals, Inc., Plaintiffs,**

v.

**The S.A. DAY MANUFACTURING CO., INC., Defendant.**

**No. 94–CV–286C(H).**

United States District Court, W.D. New York.

Sept. 13, 1996.

Lawrence A. Salibra, II, Cleveland, OH, John C. Tillman, Cleveland, OH, for Alcan Intern., Ltd.

Edward S. Bloomberg, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Solvay Performance Chemicals.

Robert J. Lane, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for S.A. Day Mfg. Co., Inc.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. John T. Curtin, pursuant to 28 U.S.C. § 636(b), for all pretrial matters and to hear and report on dispositive motions. Defendant has moved to compel discovery, and plaintiffs have moved to disqualify defendant's counsel. For the reasons that follow, defendant's motion is granted, and plaintiffs' motion is denied.

### BACKGROUND

The complaint in this action was filed on April 18, 1994, alleging false advertising and deceptive business practices in violation of federal and state law. Specifically, plaintiffs allege that defendant made false representations about plaintiff's product in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York General Business Law §§ 349 & 350.

Plaintiff Alcan International ("Alcan") is a Canadian corporation that developed an aluminum "brazing flux" product marketed under the registered trademark NOCOLOK. Plaintiff Solvay Performance Chemicals ("SPC") is a division of Solvay Specialty Chemicals ("SSC"), a Delaware corporation with its principal place of business in Greenwich, Connecticut. SPC is a licensee of the NOCOLOK trademark and a distributor of NOCOLOK flux (Item 1, ¶¶ 2–3).

Brazing flux is used to seal aluminum radiators and other aluminum heat exchangers. It is manufactured and sold in powder form. In the sealing process, the powder is dissolved in water and the solution is sprayed on the aluminum product. The aluminum product is placed in a drying oven to allow the water to evaporate and the flux to disperse evenly. The aluminum product is then placed in a brazing furnace where the flux melts and flows into any gaps or holes, making the product watertight (see Item 20, ¶ 2).[1]

Defendant is a New York corporation with its principal place of business in Buffalo. Defendant manufactures and markets a competing brand of aluminum brazing flux called S.A. Day "2805" flux. According to the complaint, defendant made statements and distributed promotional material in which false and deceptive comparisons of NOCOLOK flux and 2805 flux were made with respect to the amounts of corrosive materials emitted by each product during the brazing process (Item 1).

Defendant answered the complaint on June 14, 1994, and asserted a counterclaim for false advertising under the Lanham Act (Item 5). Essentially, each side claims that the other has misrepresented to customers the amount of hydrogen fluoride and potassium fluoride, corrosive to brazing furnaces, that is produced by the competing flux product during the brazing process. Defendant further alleges a counterclaim for monopolistic practices under the Sherman Act (15 U.S.C. § 2), as well as common law claims for unfair competition, trade libel, product defamation and injurious falsehood.

Also on June 14, 1994, defendant served its first set of discovery requests seeking information about the chemical components and manufacturing process for NOCOLOK flux, comparison testing of NOCOLOK and 2805 fluxes, representations made to customers, market shares and other information pertaining to the claims and counterclaims in the

case (Item 20, Exs. C, T, U). Plaintiff responded to these requests on August 10, 1994 (*id.*, Ex. T). Several sets of discovery requests and responses followed (*id.*, Exs. V, W), as well as the depositions of SPC's President Dietmar Oetterer (*see id.*, ¶ 11 & Ex. D), SPC's Product Manager Michael Lamprecht, (*see id.*, ¶ 16 & Ex. G), Alcan's retired Director of Intellectual Property Tibor Horbasz (*see id.*, ¶ 36 & Ex. K), and other Alcan or SPC employees.

Based on plaintiffs' responses to its discovery requests, defendant filed this motion to compel Solvay Fluor und Derivate GmbH ("Solvay Fluor"), the German manufacturer of NOCOLOK flux, to produce documents and deposition testimony relevant to the claims and counterclaims in the case. According to the motion papers, plaintiffs have refused to produce pertinent test results and other technical information in the possession and control of Solvay Fluor, which is not a party to this action but is a foreign corporate affiliate of SPC. Specifically, defendant requests an order from the court (1) compelling plaintiffs to produce all responsive documents and information in the possession of Solvay Fluor, (2) directing plaintiffs to produce Solvay Fluor employees Dr. Jurgen Poblotzki and Mr. Alfred Borinski for deposition, (3) directing plaintiffs to respond to specific interrogatories and document requests pertaining to information about market shares, and (4) awarding attorney's fees and expenses.

In response to this motion, plaintiffs assert that the court cannot compel Dr. Poblotzki and Mr. Borinski to give deposition testimony because they are neither parties nor employees of a party. Indeed, in a letter dated June 12, 1996, plaintiffs' associate counsel advised this court that Dr. Poblotzki had left Solvay Fluor for other employment, and Mr. Borinski had retired. Thus, according to plaintiffs, Poblotzki and Borinski are simply non-party witnesses who, as residents of a foreign country, must be subpoenaed pursuant to the procedures authorized by the

---

**1.** Items 20 (Defendant's Notice of Motion to Compel), 29 (Defendant's Reply Affidavit), and 38 (Defense Counsel's Affidavit in Opposition to Plaintiffs' Motion to Disqualify) were filed under seal pursuant to a Confidentiality Stipulation and Agreement, signed as an order by Judge Curtin on February 23, 1995 (Item 13) and a subsequent sealing order signed by Judge Curtin on February 5, 1996 (Item 23).

Hague Convention. To the extent the motion to compel seeks responses to document demands and interrogatories, plaintiffs object on the ground that defendant has not submitted an affidavit detailing any good faith efforts to resolve these disputes, as required under Rule 37 of both the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure for the Western District of New York (*see* Item 26).

On May 7, 1996, plaintiffs moved to disqualify defense counsel from further representation based on an alleged conflict of interest. According to plaintiffs' counsel, the law firm of Hodgson, Russ should be disqualified because it has represented Alcan Aluminum Corporation ("Alcancorp"), the parent corporation of plaintiff Alcan International Limited, in previous litigation and immigration matters (*see* Item 34).

Both motions were argued before the undersigned on June 27, 1996. For the reasons that follow, defendant's motion to compel is granted, and plaintiffs' motion to disqualify defense counsel is denied.

### DISCUSSION

#### 1. Defendant's Motion to Compel.

The central question presented by defendant's motion is whether Solvay Fluor, a German corporation with its principal place of business in Hannover, Germany, can be compelled to respond to discovery demands made under the Federal Rules of Civil Procedure. Specifically, defendants seek deposition testimony and document production from Solvay Fluor in order to obtain information relating to technical aspects of the development, manufacture, and comparison testing of NOCOLOK flux.

■ The ordinary discovery provisions of the Federal Rules of Civil Procedure, rather than the more complicated procedures of the Hague Convention, generally apply to the discovery of information in the custody or control of a party's foreign affiliate. *See, e.g., Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987); *see also International Society for Krishna Consciousness v. Lee,* 105 F.R.D. 435, 445 (S.D.N.Y.1984); *Cooper Industries, Inc. v. British Aerospace,* 102 F.R.D. 918, 919–20 (S.D.N.Y.1984). This is true whether the information or witness is located in a foreign country, *Cooper Industries, supra* at 920, or whether the corporate entity from whom the discovery is sought is itself a party to the case. *Addamax Corp. v. Open Software Foundation, Inc.,* 148 F.R.D. 462, 468 (D.Mass.1993); *Compagnie Francaise d'Assurance v. Phillips Petroleum,* 105 F.R.D. 16, 33 (S.D.N.Y.1984).

■ When considering whether information sought from a corporate party's foreign affiliate is in the party's "custody and control" so as to be discoverable under the Federal Rules, the focus is on the nature of the relationship between the two corporations. *Addamax Corp., supra* at 465; *Afros S.P.A. v. Krauss–Maffei Corp.,* 113 F.R.D. 127, 129–30 (D.Del.1986). In each case, "it is the nature of the transactional relationship between the [corporate entities] that is pivotal. The court must examine the facts of the case before it in order to determine if the relationship is such that [discovery] is to be compelled." *Addamax Corp., supra* at 467.

The *Cooper Industries* case is particularly illustrative. There, the plaintiff sued to recover for fire damage to an aircraft bought from the defendant. The plaintiff sought the production of service manuals, blueprints and other documents that the defendant claimed were in the possession of the manufacturer, which was defendant's British affiliate. At the time the lawsuit was filed, the defendant was wholly owned by the British affiliate, and was "[e]ssentially . . . the distributor and servicer in the United States of the British affiliate's planes." *Cooper Industries, supra,* 102 F.R.D. at 919. In ruling on the plaintiff's motion to compel, the court found:

The documents plaintiff seeks all relate to the planes that defendant works with every day; it is inconceivable that defendant would not have access to these documents and the ability to obtain them for its usual business. . . . Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has

dealt in the United States merely by storing them with its affiliate abroad.

*Id.* at 919–20.

■ Similarly, in this case, it is undisputed that Solvay Fluor is the manufacturer of the flux product imported and sold in the United States by plaintiff SPC under exclusive distributorship and manufacturer's representative agreements (Item 20, Exs. I, J). Both SPC and Solvay Fluor are corporate members of a unified worldwide business entity known as the "Solvay Group" (*see id.*, Ex. F), under the common control of Solvay, S.A. (Belgium) (*see id.*, Ex. D, p. 12). The Solvay Group issues a consolidated annual financial report (*id.*, Ex. F). Both SPC and Solvay Fluor use the same corporate logo in their promotional materials (*id.*, Exs. E, H). Mr. Oetterer, SPC's President, and Mr. Lamprecht, SPC's product manager for NOCOLOK flux, each testified that he has regular contact with Solvay Fluor regarding product sales and marketing (*id.*, Exs. D, G).

In its discovery requests, defendant seeks deposition testimony and documents from Solvay Fluor reflecting the chemical components and manufacturing process of NOCOLOK flux, as well as evaluations, tests, studies and comparisons made with respect to both NOCOLOK and defendant's flux product. This information clearly relates to the claims and counterclaims in this case regarding the relative amounts of corrosive materials emitted by each product during the brazing process. As in *Cooper Industries*, it is "inconceivable" that SPC would not have access to this information and the ability to obtain it, not only for the purpose of proving its claims in this lawsuit but also for the purpose of conducting its business under its distribution and representative agreements with Solvay Fluor.

In addition, Mr. Borinski[2] has been specifically identified as a Solvay Fluor employee with direct knowledge about comparison testing and other technical information relevant to the claims and counterclaims in this case and unavailable from any other source. Mr.

Lamprecht testified that Mr. Borinski has traveled to the United States to present SPC's customers marketing information, complete with graphs and charts, regarding the relative characteristics of NOCOLOK flux and other flux products, including defendant's (Item 20, Ex. G). When questioned about the technical nature of the testing and analysis utilized by Mr. Borinski and Solvay Fluor to compile this information, Mr. Lamprecht was unable to respond (*id.*).

Under these circumstances, I find that defendant has sufficiently demonstrated that the nature of the relationship between SPC and Solvay Fluor is such that Solvay Fluor should be compelled to produce the information necessary to respond to defendant's discovery requests. Defendant has likewise demonstrated that Mr. Borinski, even though he is now retired from Solvay Fluor, can be relied upon to give deposition testimony "*respecting the matters involved in the litigation,*" *Kolb v. A.H. Bull Steamship Co.*, 31 F.R.D. 252, 254 (E.D.N.Y.1962) (emphasis in original), *quoted in Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y.1985) (discussing factors for determining "managing agent" status under Fed. R.Civ.P. 30(b)(6)), and that he is likely to possess "unique knowledge of relevant matters." *Independent Productions Corp. v. Loew's, Inc.*, 24 F.R.D. 19, 26 (S.D.N.Y.1959).

For these reasons, defendant's motion to compel SPC to produce documents and deposition testimony in the possession, custody or control of Solvay Fluor is granted.

Finally, defendant seeks answers to interrogatories and responses to document requests with respect to information about the United States market share for NOCOLOK flux. Because such information is relevant to defendant's counterclaims for antitrust violations, and because plaintiffs have not come forward with any justification for failing to produce this information, defendant's motion to compel is also granted in this regard.

---

2. Defendant's counsel concedes that SPC cannot be compelled to produce Dr. Poblotzki for deposition since he has left Solvay Fluor for other employment and is therefore beyond Solvay

Fluor's control. *See* Item 45, Declaration of Jeffrey D. Linton; *see also* June 21, 1996 letter from defendant's counsel to this court.

### 2. Motion to Disqualify Counsel.

Plaintiffs move for disqualification of the law firm of Hodgson, Russ, Andrews, Woods & Goodyear as defense counsel. The motion is based on an alleged conflict of interest stemming from Hodgson, Russ's ongoing representation of Alcancorp, the parent corporation of plaintiff Alcan International Limited, in several unrelated immigration matters.

In response to the motion, defendant has submitted the affidavits of Robert.J. Lane, Jr., Esq., the member of the Hodgson, Russ law firm responsible for the representation of defendant in this case, and of Lance C. Madden, Esq., the member of the firm responsible for the challenged "adverse representation" of plaintiff Alcan. Mr. Madden states that he represents and has in the past represented individual employees of Alcan Rolled Products Company with respect to discrete immigration matters. Alcan Rolled Products is a division of Alcancorp which, in turn, is a subsidiary of Alcan Aluminum Limited (as is plaintiff Alcan International Limited). Mr. Madden further states that the subject matter of his representation is in no way related to any of the issues in this case, and that he has not obtained any confidential information about NOCOLOK flux or any other matters relevant to this case (Item 35).

In addition, defendant has submitted the affidavit of Kevin D. Szczepanski, a Hodgson Russ associate, setting forth the amount of fees and costs billed to Alcan Rolled Products for legal work performed during the years 1992 through 1995 (Item 43). Mr. Szczepanski reiterates that this work related entirely to immigration matters involving Alcan employees, and that defendant's counsel has never obtained any information from those employees regarding the subject matter of this litigation.

■ Canon 5 of the Code of Professional Responsibility proscribes an attorney's representation of a person with interests adverse to those of an existing client, and Canon 9 provides that a lawyer "should avoid even the appearance of professional impropriety." N.Y. Judiciary Law App.; *see Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 538 (S.D.N.Y. 1989). Motions to disqualify a party's counsel of choice are generally disfavored in the Second Circuit, as they are elsewhere, primarily because of the delay and additional expense created by substitution of counsel. *Bennett Silvershein Associates v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991 ) (citing cases). In recognition of these concerns, the Circuit has established alternative guidelines for a district court to follow on a motion to disqualify an attorney for adverse representation, depending on the particular facts of the case. *Hartford Accident and Indemnity Co., supra*, 721 F.Supp. at 538.

■ When a law firm undertakes to represent two adverse parties, both of which are "clients in the traditional sense," and the relationship between the firm and the clients is continuing, the adverse representation is *prima facie* improper. *Hartford Accident and Indemnity Co., supra* at 538–39 (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir.1981); *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). In this situation, "the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his [or her] representation." *Cinema 5, supra.*

■ Where the adverse party is a "vicarious" client, or the representation is not continuing or is otherwise attenuated, a less stringent standard is applied. In this situation, "disqualification is warranted only where there is a substantial relationship between the subject matters of the representation." *Hartford Accident and Indemnity Co., supra*, 721 F.Supp. at 539 (citing *Glueck, supra; International Electronics Corp. v. Flanzer*, 527 F.2d 1288 (2d Cir.1975); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir.1973)).

■ Applying these standards to the record in this case, I find that plaintiffs have failed to convince the court that disqualification is warranted. The information provided in the affidavits submitted on this motion establishes that Alcan International is at best a "vicarious" client of the Hodgson, Russ firm. Mr. Madden states that he has repre-

sented individual employees of Alcan Rolled Products on immigration matters only. Alcan Rolled Products and Alcan International are separate co-subsidiaries of Alcan Aluminum. Hodgson, Russ has never directly represented Alcan International on any matter.

In addition, Mr. Madden's representation of individual Alcan Rolled Products employees involved discrete immigration law matters entirely unrelated to the subject matter of this litigation. The information provided by Mr. Madden suggests that during his representation he did not become aware of any information pertaining to the development, manufacturing, licensing, distribution, use or existence of NOCOLOK or any other brand of brazing flux.

Under these circumstances, I find that disqualification of the Hodgson, Russ law firm is not warranted. There is clearly not a substantial relationship between the subject matter of Mr. Madden's representation of individual Alcan Rolled Products employees and Mr. Lane's representation of the S.A. Day Company in this case. Plaintiffs have simply failed to demonstrate that the representation of defendant by the Hodgson, Russ firm involves a conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility, "undermines the court's confidence in the vigor of" Mr. Lane's representation of defendant, or places Mr. Lane "in a position to use privileged information concerning the other side through prior representation ... thus giving his present client an unfair advantage." *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979), *quoted in Hartford Accident and Indemnity Co., supra,* 721 F.Supp. at 539.

Accordingly, plaintiffs' motion for disqualification of defense counsel is denied.

### CONCLUSION

For the reasons discussed herein, defendant's motion to compel **(Item 20)** is GRANTED. Plaintiffs are directed to respond forthwith to the discovery requests itemized at Ex. C to the Lane Affidavit (Item 20), and to produce forthwith Mr. Borinski (or a mutually agreed upon representative of Solvay Fluor with the requisite knowledge of matters relevant to the case) for deposition.

Plaintiffs' motion to disqualify defendant's counsel **(Item 33)** is DENIED.

Counsel are reminded of their respective obligations under the Federal Rules of Civil Procedure to make good faith efforts to obtain disclosure or discovery prior to seeking court action, and the court's power to impose sanctions for unjustified nondisclosure.

**SO ORDERED.**