**RAMADA FRANCHISE SYSTEM, INC., Plaintiff,**

v.

**HOTEL OF GAINESVILLE ASSOCIATES, et al., Defendants.**

**No. CIV. 2:97-CV-52-WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

Nov. 19, 1997.

John L. Taylor, Jr., Matthew L. Hess, Chorey Taylor & Feil, Atlanta, GA, for Plaintiff.

Robert Leonard Rothman, Angela Denise Edwards, Arnall Golden & Gregory, Atlanta, GA, William H. Blalock, Stewart Melvin & Frost, Gainesville, GA, for Defendants.

## *ORDER*

O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of plaintiff's motion to disqualify defendants' attorney [18–1], defendants' motion to compel discovery [13–1], plaintiff's motion for a protective order [18–2], and defendants' motion to extend the discovery period [15–1]. A hearing was held regarding these motions on November 7, 1997 at 1:30 p.m. at the United States District Court in Gainesville, Georgia.

### Facts

On December 19, 1986, defendants entered into a license agreement with plaintiff for the operation of a hotel located in Gainesville. Defendants purported to terminate the license agreement effective April 1, 1996 and ceased to operate the Gainesville hotel as a Ramada hotel. Plaintiff claims that defendants' termination constituted a default of the license agreement. Defendants allege by counterclaim that plaintiff breached its contractual obligation under the license agreement to enforce high standards throughout the Ramada system.

### Legal Analysis

I. Plaintiff's Motion to Disqualify Defendants' Attorney

Plaintiff argues that defendants' attorney, Robert L. Rothman, and his firm, Arnall, Golden & Gregory, should be disqualified because of their prior representation of a sister corporation of the plaintiff. The underlying facts of the corporate relationships are somewhat complicated and will be detailed herein.

Attorney Rothman and his firm represented Days Inns of America, Inc. ("Old DIA") in various franchise disputes. When Old DIA went into bankruptcy in 1992, all of its assets were purchased by an entity which was formed for this purpose by HFS, Inc. ("HFS"). The new subsidiary entity of HFS was also named Days Inns of America, Inc. ("New DIA"). Old DIA emerged from bankruptcy as Buckhead America Corporation, retaining, however, no assets of Old DIA.[1] Ramada Franchise Systems, Inc. ("Ramada"), the plaintiff herein, is also a subsidiary of HFS, making it a sister corporation to New DIA.

The order by the bankruptcy court issued upon the sale of assets from Old DIA to New DIA figures importantly in the scenario. The bankruptcy court's order specified that the New DIA system was to be maintained separately from HFS's other hotel affiliates. *In re Days Inns of America, Inc., et al.,* No. 91–978 (Bankr.D.Del. Dec. 20, 1991). Among other requirements of separate operations in the order, section 5(e) states that New DIA must "maintain a separate Quality Assurance system from those of other Hotel Affiliates...." *Id.*

A disqualification motion such as this must be approached with caution in today's world of "national or multi-national public corporations owning or partially own-

---

1. Attorney Rothman and his firm presently represent Buckhead America Corporation.

ing subsidiaries which may also be national or multi-national...." *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 264, 267 (D.Del.1980). However, courts must ensure that the trust and loyalty owed by lawyers to their clients are not compromised. *Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 535 (S.D.N.Y.1989).

■ In order for an attorney to be disqualified on the basis of prior representation, "the party seeking disqualification must prove it once had an attorney client relationship with the opposing lawyer and that the subject matter of the two transactions is substantially related." *Barton v. Peterson*, 707 F.Supp. 520, 522 (N.D.Ga.1988). *See also Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir.1988). In the first part of the analysis, however, the focus is not on whether the relationship at issue is "in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship 'for purposes of triggering inquiry into the potential conflict....'" *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir.1981) (citations omitted). The adverse interests at stake, therefore, do not have to be those of a "client" in the traditional sense. *Marshall v. State of New York Div. of State Police*, 952 F.Supp. 103, 108 (N.D.N.Y.1997). The second part of the analysis, the "substantial relationship" inquiry, is restricted to the *possibility* of disclosure; the court may not inquire into whether actual confidences were disclosed. *Dodson v. Floyd*, 529 F.Supp. 1056, 1060 (N.D.Ga.1981). In making its "substantial relationship" analysis, the court must determine three things: the scope of the prior legal representation; the reasonableness of inferring that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and the relevance of the information to the issues raised in the pending litigation. *Id.* at 1061. If the moving party meets its burdens, the court will make an irrebuttable presumption that relevant confidential information was disclosed during the former period of representation. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).[2]

### A. Attorney–Client Relationship

The first determination for this court, therefore, is whether plaintiff has met the threshold requirement of showing that an attorney-client relationship exists or has existed between Ramada and attorney Rothman and his firm.[3] *Glover v. Libman*, 578 F.Supp. 748, 757 (N.D.Ga.1983); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir.1971). After all, "[t]o allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir. 1976). Because of the complex corporate relationships involved, a finding that plaintiff enjoyed an attorney-client relationship with Rothman for the purposes of a disqualification analysis entails two components. First, the attorney-client relationship and the privileges entailed must be found to have transferred from Old DIA to New DIA with the franchise assets. Second, it must be determined that these privileges can be asserted by New DIA's sister corporation.

### 1. Transfer of Attorney–Client Relationship From Old DIA to New DIA

■ The authority to assert and waive the corporation's attorney-client privilege follows the passage of control of the corporation. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). "The right to assert the attorney client privilege is an incident of control of the corporation and remains with the corporation as it undergoes mergers, takeovers, and name changes." *NCL Corp. v. Lone Star Bldg. Ctrs., Inc.*, 144

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**3.** Numerous cases sustain the proposition that a corporation can be a client. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 n. 10 (5th Cir. 1970); *Joiner v. Hercules*, 169 F.R.D. 695, 697 (S.D.Ga.1996).

B.R. 170, 174 (S.D.Fla.1992). The mere sale or transfer of a *portion* of a corporation's assets does not necessarily transfer the corporation's attorney-client privilege. *See, e.g., Id.* at 174 (finding that the attorney-client privilege did not follow the assignment of a lease) and *Telectronics Proprietary Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir.1988) (affirming the district court's holding that the assignment of a patent does not transfer an attorney-client relationship). However, although this circuit has not addressed the issue, other courts have found that assignees of *most or all* of a corporation's assets could assert the corporation's attorney-client privilege. *See, e.g., In re Financial Corp. of Am.*, 119 B.R. 728 (Bankr. C.D.Cal.1990) (holding that the authority to assert the corporation's attorney-client privilege passes with the transfer of substantially all of the corporation's assets and liabilities), and *In re Crescent Beach Inn*, 37 B.R. 894 (Bankr.D.Me.), *reconsid. denied*, 40 B.R. 56 (1984) (holding that the transferee of all the assets of a reorganized company was the debtor's successor for purposes of the attorney-client privilege and was therefore entitled to assert the privilege formerly held by the debtor). The court in *Crescent Beach* suggested that whether an entity was a "successor" entitled to claim the attorney-client privilege "should be interpreted in light of the surrounding circumstances." *Id.* at 896 (citing 15 Fletcher Cyclopedia of Corporations § 7203 at 426 (1983)).

During Old DIA's bankruptcy, New DIA acquired its assets, tangible and intangible, including the name "Days Inns of America". Old DIA retained no franchise assets, emerging from bankruptcy as Buckhead America. In the current controversy surrounding this motion to disqualify, Buckhead America is "merely a spectre, and as such, too insubstantial to render vicarious the relationship between" New DIA and attorney Rothman. *See United States v. Nabisco, Inc.*, 117 F.R.D. 40, 46 (E.D.N.Y.1987).

▮ In accordance with the preceding discussion, the court determines that the authority to assert or waive Old DIA's attorney-client privilege passed to New DIA with its acquisition of the assets and control of Old DIA.

2. *Authority of Ramada to Assert Attorney–Client Relationship*

▮ Courts have come to differing conclusions about whether an affiliated entity (parent or sister corporation) of an entity that was represented by an attorney should also be considered a "client" for disqualification purposes. However, underlying each court's analysis typically runs a similar theme. Rather than focusing on labels as a means of resolving attorney disqualification disputes, in making its determination a court should sift the facts and circumstances involved. *See, e.g., Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 798 F.Supp. 612, 616 (C.D.Cal.1992) (finding the subsidiary to be "inextricably intertwined" with its parent company); *Teradyne, Inc. v. Hewlett–Packard Co.*, 1991 WL 239940, *5 (N.D.Cal.1991) (because of the parent company's control and supervision of the legal affairs of the subsidiary, the court found that there was sufficient "identity of interest" for treating the two as a single client for the limited purpose of determining whether there was a conflict); *Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 540 (S.D.N.Y.1989) (finding that "[c]ertain aspects of their separate corporate identities notwithstanding," the parent had also become a client through its assiduous supervision of the subsidiary's litigation); *United States v. Nabisco, Inc.*, 117 F.R.D. at 44 (determining that "the merits of this motion must be determined with reference to the relationship between these two entities" and finding that, in reality, counsel's efforts had been taken for the subsidiary rather than the parent corporation); *Pennwalt Corp. v. Plough*, 85 F.R.D. 264 (D.Del.1980) (discussed below).

This pragmatic approach is illustrated in *Pennwalt Corporation v. Plough*, 85 F.R.D. 264. In this case plaintiff's attorneys had previously represented the sister corporation of the defendant. In seeking disqualification of the attorneys, the defendant urged a prophylactic rule which would disqualify attorneys who had represented any affiliated corporation of a party. *Id.* at 268. This proposal was based on the idea that when two corporations are subject to common ownership and control, any injury or risk to

one will necessarily cause injury or risk to the other. *Id.* The court rejected this prophylactic rule: "Vigorous advocacy cannot change the fact that [the sister corporation] is a corporate entity distinct from [the defendant] and [the parent]." *Id.* The court also rejected as overly broad the plaintiff's suggestion that disqualification was warranted only if an attorney had represented the *particular* adverse party. *Id.* Instead the court looked at the relationship between the sister entities, *id.* at 272, and made a realistic appraisal of the situation. *Id.* at 270.

Although most of the case law in this discrete area concerns parent/subsidiary relationships, several cases touch on whether a co-subsidiary can assert itself as a "client" in the place of its sister company. *See Alcan Int'l Ltd. v. S.A. Day Mfg. Co., Inc.,* 176 F.R.D. 75 (W.D.N.Y.1996); *Apex Oil Co., Inc. v. Wickland Oil Co.,* 1995 WL 293944 (E.D.Cal.1995); and *Pennwalt,* 85 F.R.D. 264. In *Alcan,* the court found that a company whose co-subsidiary had been represented by a firm was "at best a 'vicarious' client" of that firm. *Alcan Int'l Ltd.,* 176 F.R.D. at 81. However, the company failed to show a substantial relationship between the representations because the subject matter was entirely unrelated. *Id.* In *Apex Oil,* the court deemed the co-subsidiary relationship presented to be more attenuated than that of a parent corporation and its subsidiary. *Apex Oil Co.,* 1995 WL 293944 at *2. In determining that the two sister corporations were not the same client for disqualification purposes, the court noted that the companies had mostly different management and senior officers and had different principal places of business and mailing addresses. *Id.*

■ This court similarly finds that a pragmatic approach which takes the relationships of the parties into account is superior to the exaltation of form over substance. In its Motion to Disqualify and in the Affidavit of Joel Buckberg, plaintiff has asserted its portrayal of the relationship between the parent company, HFS, and its wholly-owned subsidiaries, Ramada and New DIA. According to plaintiff, all three entities have substantially similar management personnel. They all share the same headquarters and have the same "corporate principles and business philosophy." Buckberg Aff. ¶ 5.

The legal department services all three. *Id.* Buckberg holds identical titles (Senior Vice President—Legal and Assistant Secretary) in both subsidiaries. *Id.* The court finds that plaintiff has provided sufficient information pointing to an "identity of interest" between New DIA and Ramada for the limited purpose of determining whether there was a conflict requiring disqualification of defendants' counsel.

### B. *Substantial Relationship*

■ Although the court finds that Ramada may assert itself as a client for the purpose of the disqualification motion, Ramada is unable to show that there is a substantial relationship between attorney Rothman and his firm's prior representation of Old DIA and the current litigation. Although both involved issues relating to hotel franchises and quality assurance systems, information which counsel may have received in its prior representation of Old DIA is not relevant to the issues raised in the pending litigation against Ramada.

Plaintiff asserts that Bill Keeble, the Director of Quality Assurance for Ramada, had a comparable position in Old DIA. In fact, plaintiff asserts, "When HFS acquired the assets and business of Old DIA, HFS and its wholly-owned subsidiary RFS (Ramada) employed Mr. Keeble to develop and implement a quality assurance system for RFS that would be based substantially upon the system that Mr. Keeble had already developed and implemented for Old DIA." Buckberg Aff. ¶ 13.

This surprising statement seems to run counter to the directives given by the bankruptcy court in its December 20, 1991 order. In that order, the court held that New DIA's officers and senior management personnel were not to overlap those of the other HFS affiliates. *In re Days Inns of America, Inc., et al.,* No. 91–978 at § 2(c). Additionally, the bankruptcy court limited the activities in which New DIA was to engage: "Buyer (New DIA) shall not at any time, directly or indirectly, own, manage, operate, join, control or participate in the ownership, management, operation or control of, franchised lodging services other than the Days Inns franchise

system." *Id.* at § 2(e). The court ordered HFS to ensure that separate operations would be maintained between New DIA and HFS' other affiliates. Included in this directive of separation were such things as the marketing departments, the advertising agencies, and the quality assurance systems. *Id.* at § 5. Defendants argue that unless plaintiff is admitting a violation of the bankruptcy order, Ramada cannot establish the requisite connection with New DIA's quality assurance system to warrant disqualification.[4] This court agrees that if HFS has followed the bankruptcy court's order that it maintain separate quality assurance systems between New DIA and Ramada, then Rothman and his firm's representation of Old DIA, and the information which they necessarily gleamed regarding *its* quality assurance system, will not present cause for disqualification. New DIA's quality assurance system is not relevant to the matter at hand.

Plaintiff additionally suggests that defendants' counsel should be disqualified in this case because of a 1997 bid by Arnall, Golden & Gregory to represent HFS and its subsidiaries as Regional Counsel. Buckberg Aff. ¶ 17. However, it is clear from the solicitation of this bid by HFS that no substantive or confidential information accompanied this occurrence. *See, e.g., Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1384 (10th Cir.1994). Even more patently absurd is plaintiff's suggestion that defendants' counsel should be disqualified because "Mr. Rothman and Arnall Golden & Gregory also served as [Joel Buckberg's] personal counsel in a matter in 1993 involving a dispute over attorney's fees." Buckberg Aff. ¶ 18.

In accordance with the above discussion, plaintiff's motion to disqualify defendants' counsel is hereby DENIED.

## II. Defendants' Motion to compel

■ Defendants complain that plaintiff's responses to their document requests are laundry lists of objections which are then incorporated into most of the responses. Plaintiff seeks to limit discovery to a specific region in the United States and to confine it within a certain time frame. The court will impose a time limitation on discovery because defendants had arranged a special amendment to the license agreement with plaintiff such that defendants could have terminated the agreement with no penalty through 1991. Therefore, discovery will be limited to the period beginning in January 1992 and ending with defendants' termination of the license agreement in April 1996. The court will not, however, place a similar limitation on geographic scope of discovery. If Ramada promotes itself as an international franchise with international standards of quality, then discovery from franchises throughout the Ramada system are relevant to this action. Accordingly, plaintiff's motion for a protective order against discovery is hereby DENIED.

## III. Defendants' Motion to Extend Discovery

Defendants argue that extensive discovery remains to be done and that discovery has been delayed by plaintiff's overbroad objections. There is no question that the disqualification motion caused discovery to cease for all practical purposes. As a consequence, discovery will be extended an additional four months from the date of this order. Accordingly, defendants' motion to extend discovery is hereby GRANTED.

### Conclusion

Based upon the foregoing, plaintiff's motion to disqualify defendants' attorney is DENIED [18–1], defendants' motion to compel discovery is GRANTED [13–1], plaintiff's motion for a protective order is DENIED [18–2], and defendants' motion to extend the discovery period is GRANTED [15–1].

---

**4.** Although this court could probably determine as a collateral issue whether a violation of the bankruptcy court's order has occurred, for this case it is unnecessary for the court to determine the issue.