**COLORPIX SYSTEMS OF AMERICA and Travelers Casualty and Surety Company of Illinois f/k/a Aetna Casualty Surety Company of Illinois, Plaintiffs,**

v.

**BROAN MFG. CO., INC., Defendant.**

**and**

**Scott Smith and Travelers Casualty and Surety Company of Illinois f/k/a Aetna Casualty Surety Company of Illinois, Plaintiffs,**

v.

**Broan Mfg. Co., Inc., Defendant.**

**Nos. 3:98CV2209 (AVC), 3:99CV846 (AVC).**

United States District Court, D. Connecticut.

Feb. 7, 2001.

---

Co. Inc., defendant (98–CV–2209, 99–CV–846).

Putnam Hutchinson Perry, Rome McGuigan Sabanosh, Hartford, CT, Stephen T. Jacobs, Patrick J. Hodan, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Broan Mfg. Co. Inc., defendant (98–CV–2209).

Stephen E. Goldman, Robinson & Cole, Hartford, CT, John Higgins Kane, Robinson & Cole, Stamford, CT, for Jay Control Co. Inc., Travelers Property & Casualty Corp., consolidated defendants (98–CV–2209).

James M. Ruel, Robinson & Cole, Stamford, CT, foe Travelers Property & Casualty Corp., Consolidated defendant (98–CV–2209),

Christopher M. Harrington, Gersten & Clifford, Hartford, CT, for Joseph Giarratana, movant (98–CV–2209).

Jason Marc, Kuselias, Robinson & Cole, Hartford, CT, Keith James Currier, Law Offices of Stuart G. Blackburn, Stuart G. Blackburn, Justin J. Donnelly, Sr., Windsor Locks, CT, for Colorpix Systems of America, plaintiff (98–CV–2209).

John Higgins Kane, Robinson & Cole, Stamford, CT, for Travelers Casualty & Surety Co., IL, plaintiff (No. 99–CV–846).

Justin J. Donnelly, Sr., Windsor Locks, CT, for Scott Smith, plaintiff (99–CV–846).

John Higgins Kane, Robinson & Cole, Stamford, CT, for Travelers Casualty & Surety Co., consolidated plaintiff (98–CV–2209).

Joseph Bree Burns, Rome McGuigan Sabanosh, Hartford, CT, for Broan Mfg.

## RULING ON MOTION TO DISQUALIFY

COVELLO, Chief Judge.

These consolidated actions are products liability actions seeking money damages in connection with two fires. The plaintiffs, Colorpix Systems of America ("Colorpix"), Scott Smith and Travelers Casualty and Surety Company of Illinois f/k/a Aetna Casualty Surety Company of Illinois ("Travelers"), alleged that these fires were caused by purportedly defective bathroom exhaust fans manufactured by the defendant, Broan Mfg. Co., Inc. ("Broan").

Broan now moves for an order disqualifying the law firm of Robinson & Cole ("R & C") from continuing to represent Travelers in the within cases, alleging that R & C's representation of Broan's parent company and affiliate company in a prior case presents a conflict of interest which prohibits R & C from continuing to represent Travelers in the within cases.

The questions presented are: 1) whether Broan was a "vicarious client" of R & C by way of the law firm's prior represen-

tation of Broan's parent company and affiliate company; 2) whether there is a "substantial relationship" between R & C's prior representation of Broan's parent company and affiliate company and its current representation of Travelers against Broan in the within cases; 3) whether R & C, in the course of its prior representation of Broan's parent company and affiliate company, was likely to have had access to privileged information relevant to Broan's defense of the within cases; and 4) whether Broan waived the alleged conflict by failing to raise the issue in a timely fashion. For the following reasons, the court concludes the first three of these issues in the affirmative, the fourth issue in the negative, and determines that R & C is disqualified from continuing to represent Travelers in the within cases.

## FACTS

Examination of the complaint, the memoranda supporting and in opposition to the within motion and the accompanying affidavits reveals the following:

### Defendant Broan and its Corporate Family

Broan is a wholly owned subsidiary of Nortek, Inc. Nordyne, Inc. is also a wholly owned subsidiary of Nortek. Together, Broan and Nordyne, who are both in the business of manufacturing various types of electric "air handling units," comprise a substantial share of Nortek's business. Neither Nortek nor its subsidiary, Nordyne, are parties to the present actions.

Neither Broan nor Nordyne maintain their own legal departments. Instead, both companies utilize their parent company's, i.e., Nortek's, legal department to defend fire subrogation cases such as the cases here in issue. Nortek's legal department consists of three attorneys and one paralegal. Kevin Donnelly is the vice president, secretary and general counsel of Nortek, Nordyne and Broan.

Nortek, Nordyne and Broan, through their shared legal department at Nortek, share the same business philosophy with respect to legal matters and have developed a uniform strategy and approach in defending fire subrogation cases which involve a product liability claim arising from the manufacture of an electric air handling unit. There is a significant overlap in Nortek's, Nordyne's and Broan's strategies, use of expert witnesses and staffing for such fire subrogation cases.

### Robinson & Cole's Prior Representation of Nortek and Nordyne

In the Fall of 1997, Reliance Insurance Company brought suit in Connecticut superior court against "Nortek Inc. d/b/a Nordyne, Inc." and others in an action titled *Reliance Insurance Company, et al. v. Williams Scotsman, Inc., et al.*, No. 98–CV–0576452S (hereinafter *"Reliance v. Scotsman"*). In *Reliance v. Scotsman*, the plaintiff alleged, inter alia, that a fire caused by Nortek's "design, manufacture and/or installation" of "Heating, Ventilating and/or [Air Conditioning] units" ("HVAC units") resulted in a loss to one of its insureds.

In December 1997, Donnelly retained R & C to represent Nortek and Nordyne in the *Reliance v. Scotsman* matter. Frank Coulom was the attorney at R & C responsible for representing Nortek and Nordyne. Donnelly consulted with Coulom, both directly and indirectly through R & C's contact at Nordyne, one Sonny Bishop, and developed a litigation strategy for Nortek's and Nordyne's defense in *Reliance v. Scotsman*. R & C regularly corresponded with Donnelly concerning the status of Nortek's and Nordyne's defense in *Reliance v. Scotsman*.

In or about May 1998, counsel for Reliance contacted Coulom to discuss substituting Nordyne for Nortek as the proper party defendant in *Reliance v. Scotsman*. Counsel for Reliance agreed to substitute Nordyne on the condition that Nortek agree to allow Reliance to recommence suit against Nortek if Reliance later dis-

covered that Nortek was, in fact, the proper party defendant. On May 13, 1998, Coulom consulted Donnelly concerning Nortek's agreement to this condition and subsequently, Reliance amended its complaint and moved to substitute Nordyne for Nortek in *Reliance v. Scotsman.*

On or about August 28, 2000, Reliance withdrew its complaint against Nordyne and R & C's representation of Nortek and Nordyne in *Reliance v. Scotsman* terminated.

### The Cases Currently Pending in Federal Court

The within consolidated cases, *Colorpix Systems of America, et al. v. Broan Mfg. Co., Inc.* and *Scott Smith, et al. v. Broan Mfg. Co., Inc.,* consolidated docket number 3:98cv2209 (hereinafter "the *Colorpix v. Broan* cases"), involve two separate fires which occurred in Connecticut on October 15, 1996 and November 11, 1997, respectively. The complaints in the *Colorpix v. Broan* cases allege that the fires were caused by purportedly defective bathroom exhaust fans manufactured by Broan. R & C currently represents the plaintiff, Travelers, in the *Colorpix v. Broan* cases.

Patrick Hodan is Broan's lead outside counsel in the *Colorpix v. Broan* cases. On or about November 6, 1998, Hodan, apparently unaware that R & C represented Travelers in the *Colorpix v. Broan* cases, contacted R & C for purposes of retaining the firm as Broan's local counsel in the *Colorpix v. Broan* cases. Later that day, R & C informed Hodan that the firm would be unable to act as Broan's local

counsel in the *Colorpix v. Broan* cases because R & C "was involved in a matter on behalf of Travelers in which Broan was an adverse party."

Donnelly has supervised Broan's defense of the *Colorpix v. Broan* cases and has been in regular contact with Broan's outside counsel and Broan's officers to discuss Broan's position and strategy in defending the *Colorpix v. Broan* cases. Broan has utilized the services of Nortek's and Broan's shared legal department in defending the *Colorpix v. Broan* cases.

### STANDARD

■ "The district court bears the responsibility for the supervision of the members of its bar." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975). "[T]he standards for attorney conduct in this District are set by the Rules of Professional Conduct as approved by the Judges of the Connecticut [s]uperior [c]ourt." *Prisco v. Westgate Entertainment, Inc.,* 799 F.Supp. 266, 268 (D.Conn. 1992); D.Conn.Loc.Civ.R. 3(a). Pursuant to these rules of conduct, "[a] lawyer who has formerly represented a client in a matter shall not thereafter ... [r]epresent another person in ... a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation...." Connecticut Rule of Professional Conduct 1.9; *Bergeron v. Mackler,* 225 Conn. 391, 393, 623 A.2d 489 (1993).[1] In the Second Circuit,

---

1. As discussed below, Broan argues that a conflict of interest exists here under Connecticut Rule of Professional Conduct 1.7, which prohibits an attorney from concurrently representing adverse clients. However, on or about August 28, 2000, Reliance withdrew its complaint against Nordyne and R & C no longer represents Nordyne and/or Nortek in the Reliance case. Accordingly, the court analyzes the within motion under Connecticut Rule of Professional Conduct Rule 1.9, which prohibits an attorney from representing a client in a matter "substantially related" to a matter in which the attorney represented a former client when the former client's inter-

ests are "materially adverse" to the new client's interests, "unless the former client consents after consultation." However, under either rule, as discussed further below, the analysis of the disqualification question is the same when the attorney's relationship with one of the clients is attenuated or "vicarious" as opposed to "traditional." Under such circumstances, the court must determine whether there is a "substantial relationship" between the two representations. *Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 539 (S.D.N.Y.1989) (holding that in "cases of vicarious or attenuated rep-

an attorney may be disqualified from representing a client in a particular case if:

  (1) the moving party is a former client of the adverse party's counsel;

  (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues of the present law suit; and

  (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*United States v. DiTommaso,* 817 F.2d 201, 219 (2d Cir.1987) (citing *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir.1983)).

## DISCUSSION

### I. *Broan as a Former, or "Vicarious" Client*

Broan first argues that R & C should be disqualified from continuing to represent Travelers in the *Colorpix v. Broan* cases because R & C's representation of Nortek and Nordyne in *Reliance v. Scotsman* raises a conflict of interest for R & C in violation of Connecticut Rule of Professional Conduct 1.7. Specifically, Broan argues that due to R & C's representation of Nortek and Nordyne, Broan is a "vicarious client" of R & C, and that Rule 1.7 forbids a law firm from representing a client if that representation will be directly adverse to an existing client without the existing client's consent.

Travelers responds that R & C has no conflict of interest in representing Travelers in the *Colorpix v. Broan* cases. Specifically, Travelers argues that "Broan is neither a former nor a current client of R & C" and that "R & C's concurrent representation of Travelers and Nordyne in no way adversely affects its representation of

[either client], nor does it prejudice Broan."

■ When determining whether a party is a "vicarious client" of his opponent's counsel for the purposes of determining disqualification, the Second Circuit has recognized that the court need not necessarily find that an attorney-client relationship existed in the "traditional sense." "[T]he issue is not whether ... the relationship ... is in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved in [the attorney's] role as ... counsel in [the present] action." *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748–49 (2d Cir. 1981) (recognizing that a party was a "vicarious client" of an attorney who formerly represented a trade association of which that party was a member).

When the prior representation has involved counsel representing the movant's parent or affiliate company, courts have determined whether the movant is counsel's "vicarious client" by "sift[ing] the facts and circumstances involved" in the movant's relationship with the affiliate "[r]ather than [strictly] focusing on labels" such as parent or sister company. *Ramada v. Hotel of Gainesville Assocs.,* 988 F.Supp. 1460, 1464 (N.D.Ga.1997) (citing cases). For example, courts have determined that if the current litigation will have a financial impact on the former, "traditional" client, that fact weighs in favor of finding a conflict of interest. *Stratagem Development Corp. v. Heron Int'l N.V.,* 756 F.Supp. 789, 792 (S.D.N.Y.1991) (finding that counsel's duty of undivided loyalty to the parent required disqualification in its case against the subsidiary "because the liabilities of a subsidiary corporation directly affect the bottom line of the corporate parent"). Courts have also examined the importance that the former

resentation ... disqualification is warranted only where there is a substantial relationship between the subject matters of the representa-

tion") (citing *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 749 (2d Cir.1981)).

corporate parent client has attached to the current litigation against its subsidiary, such as the corporate parent's supervision over the subsidiary's litigation. *Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 540 (S.D.N.Y.1989) (holding that the parent, through its subsidiary, was a client of the law firm in question—"if the parent and subsidiary were in fact distinct and separate entities for representation purposes, then there would have been no need for the parent's general counsel to have retained [a] supervisory role" over the subsidiary's litigation).

Courts have also considered whether the affiliated companies share an "identity of interest," for example, whether the companies have "substantially similar management personnel," share "the same corporate principles and business philosophy" and share the services of one legal department. *Ramada v. Hotel of Gainesville Assocs.,* 988 F.Supp. 1460, 1465 (N.D.Ga. 1997) (finding that the movant "provided sufficient information pointing to an 'identity of interest' ... for the limited purpose of determining whether there was a conflict requiring disqualification" of counsel).

■ Here, it is undisputed that Nortek and Nordyne were R & C's "traditional" clients in connection with the *Reliance v. Scotsman* case. Donnelly, as general counsel to both Nortek and Nordyne, hired R & C to represent both Nortek's and Nordyne's interests and R & C acted on behalf of both Nortek and Nordyne in *Reliance v. Scotsman.* Nortek was a named defendant in *Reliance v. Scotsman* for at least five months during R & C's representation of Nortek and Nordyne. Only after negotiation with R & C, and R & C's subsequent consultation with Donnelly as a representative of Nortek, did Reliance later substitute Nordyne for Nortek. Furthermore, R & C regularly corresponded with Donnelly at his Nortek office concerning the status of Nordyne's defense in *Reliance v. Scotsman.*

Also, because Broan is a wholly owned subsidiary of Nortek and together, with Nordyne, comprises a substantial share of Nortek's business, it is also evident that any judgment Travelers may obtain against Broan in the *Colorpix v. Broan* cases will directly and adversely affect Nortek's bottom line. *See Stratagem Development Corp. v. Heron Int'l N.V.,* 756 F.Supp. 789, 792 (S.D.N.Y.1991).

Further, Nortek's general counsel has supervised Broan's defense of the *Colorpix v. Broan* cases. Broan has utilized the services of Nortek's and Broan's shared legal department in defending the *Colorpix v. Broan* cases and Donnelly has regularly discussed Broan's position and strategy in defending the *Colorpix v. Broan* cases with Broan's outside counsel and Broan's officers. *See Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.,* 721 F.Supp. 534, 540 (S.D.N.Y.1989).

In addition, Broan and Nortek share an "identity of interest" in that they share one legal department, have the same vice president, secretary and general counsel, share the same business philosophy with respect to legal matters and have developed a uniform strategy and approach to defending fire subrogation cases which involve a product liability claim arising from the manufacture of an electric air handling unit, such as the *Reliance v. Scotsman* case and the *Colorpix v. Broan* cases. *Ramada v. Hotel of Gainesville Assocs.,* 988 F.Supp. 1460, 1465 (N.D.Ga.1997).

In light of the foregoing, the court concludes that Broan has provided sufficient evidence of an "an attorney-client relationship [between Broan and R & C] for [the limited] purpose[ ] of triggering inquiry into the potential conflict involved in [R & C's] role as ... counsel" for Travelers against Broan in the *Colorpix v. Broan* cases. *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 748–49 (2d Cir.1981). Accordingly, the court must next determine whether there is a "substantial relationship" between R & C's prior representation of Nortek and Nordyne and R & C's

current representation of Travelers against Broan which requires disqualification. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749–50 (2d Cir.1981).

## II. *Substantial Relationship between the Prior and the Current Representation*

As the second step in the three part disqualification analysis, Broan next argues that there is a "substantial relationship" between R & C's representation of Nortek and Nordyne in the *Reliance v. Scotsman* case and R & C's representation of Travelers against Broan in the *Colorpix v. Broan* cases. Specifically, Broan argues that "all three cases involve the allegation that the electrical appliances manufactured by either Broan or Nordyne started [a] fire" and that "all three cases concern a dispute over whether [those electrical appliances] malfunctioned." Broan further argues that "[t]he allegations of the Travelers complaints [in the *Colorpix v. Broan* cases] are nearly identical" to the allegations of the complaint in *Reliance v. Scotsman*, and that all three complaints "raise the same issues."

Travelers responds that the *Reliance v. Scotsman* case and the *Colorpix v. Broan* cases are not "substantially related." Specifically, Travelers argues that whereas Nordyne was a "minor defendant" in the *Reliance v. Scotsman* case, Broan is the "primary and sole defendant" in the *Colorpix v. Broan* cases. Travelers further argues that the alleged defective electrical appliance in the *Reliance v. Scotsman* case was a "heating and cooling unit," while the alleged defective electrical appliances in the *Colorpix v. Broan* cases are bathroom exhaust fans. In addition, Travelers argues that while the *Reliance v. Scotsman* case included a claim of improper installation against a third party, the *Colorpix v. Broan* cases do not include such a claim.

Once the court determines that a sufficient attorney-client relationship existed in a prior matter so as to require an inquiry into the potential for a conflict of interest, the court must then determine whether there is a "substantial relationship" between the prior representation and the current representation which requires disqualification. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749–50 (2d Cir. 1981). Disqualification should be ordered "only upon a showing that the relationship between the issues in the prior and present cases is 'patently clear'." *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir.1978). "[D]isqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.'" *Id.;* see *Bergeron v. Mackler*, 225 Conn. 391, 394, 623 A.2d 489 (1993). "[D]isqualification will ordinarily be required whenever the subject matter of the suit is sufficiently related to the scope of the matters on which [the] firm represent[ed] [the former client so] as to create a realistic risk ... that unfair advantage will be taken of the [former client]." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir.1981); see also *Bennett Silvershein Associates v. Furman*, 776 F.Supp. 800, 804 (S.D.N.Y. 1991) ("an earlier consultation [is] sufficiently related to a later case to warrant disqualification [if] the information the client disclosed in that earlier consultation is useful in the later case" and "[i]nformation can be useful even if the two matters are not identical").

Here, the *Reliance v. Scotsman* case and the *Colorpix v. Broan* cases all involve the allegation that either Broan or Nordyne defectively manufactured a type of electrical "air handling unit," whether a HVAC/heating and cooling unit or a bathroom exhaust fan, and that the allegedly defective electrical unit caused a fire which resulted in the respective plaintiff's losses. Thus, the central issue in "the prior and [the] present cases" are "essentially the same," i.e., whether Broan or Nordyne defectively manufactured its electrical "air handling unit." *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir.1978).

Further, as already discussed, Nortek, Nordyne and Broan, through their shared legal department, have developed a uniform strategy and approach to defending fire subrogation cases which involve a product liability claim arising from the manufacture of an electric air handling unit, such as the *Reliance v. Scotsman* case and the *Colorpix v. Broan* cases. There is also a significant overlap in Nortek's, Nordyne's and Broan's use of expert witnesses and staffing when defending such fire subrogation cases. Thus, the court concludes that the *Colorpix v. Broan* cases are "sufficiently related to the scope of the matters on which [R & C] represent[ed] [Nortek and Nordyne in the *Reliance v. Scotsman* case so] as to create a realistic risk ... that [an] unfair advantage will be taken of [Broan]" in the *Colorpix v. Broan* cases. *Glueck v. Logan, Inc.,* 653 F.2d 746, 749 (2d Cir.1981).

In light of the foregoing, the court concludes that there is a "substantial relationship" between R & C's prior representation of Nortek and Nordyne and R & C's current representation of Travelers against Broan which requires disqualification. *Glueck v. Logan, Inc.,* 653 F.2d 746, 749–50 (2d Cir.1981). Accordingly, the court must next determine whether R & C, in the course of its prior representation of Nortek and Nordyne was likely to have had access to privileged information relevant to Broan's defense of the *Colorpix v. Broan* cases.

### III. *Access to Relevant Privileged Information*

As the third and final step in the three part disqualification analysis, Broan finally argues that during R & C's representation of Nortek and Nordyne in the *Reliance v. Scotsman* case, R & C gained privileged information concerning Nortek's and its subsidiaries' unified approach to fire subrogation cases involving a product liability claim, including their internal legal strategies, legal theories and expert analyses, which R & C may now use to its unfair

advantage against Broan in the *Colorpix v. Broan* cases.

Travelers responds that R & C has never received "any information [from Nortek or its subsidiaries] that might be used to provide Travelers with an unfair advantage in its prosecution" of the *Colorpix v. Broan* cases.

■ "[D]isqualification has been ordered ... where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, ... thus giving his present client an unfair advantage." *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). "[T]he court need not, indeed cannot, inquire whether the lawyer did, in fact, receive confidential information during his previous employment which might be used to the client's disadvantage." *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir.1973). "Once a substantial relationship between the prior and the present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former client is presumed." *Bergeron v. Mackler,* 225 Conn. 391, 394, 623 A.2d 489 (1993).

■ In light of the court's conclusion that there is a "substantial relationship" between R & C's prior representation of Nortek and Nordyne and R & C's current representation of Travelers against Broan, and the fact that: (i) Broan, Nortek and Nordyne utilize a uniform strategy and approach in defending fire subrogation cases which involve a product liability claim arising from the manufacture of an electric air handling unit, such as the *Reliance v. Scotsman* case and the *Colorpix v. Broan* cases; (ii) there is a significant overlap in Nortek's, Nordyne's and Broan's use of expert witnesses and staffing when defending such fire subrogation cases; and (iii) Donnelly has actively supervised and been involved in developing the litigation strategy in defending the *Reliance v. Scotsman* case and the *Colorpix*

*v. Broan* cases, and has on at least a few occasions communicated directly with R & C concerning the *Reliance v. Scotsman* case, the court concludes that R & C, in the course of its prior representation of Nortek and Nordyne, was likely to have had access to privileged and "confidential information that would potentially disadvantage" Broan's defense of the *Colorpix v. Broan* cases. *Bergeron v. Mackler,* 225 Conn. 391, 394, 623 A.2d 489 (1993).

## IV. *Waiver of Conflict by Broan*

■ Travelers finally argues that even if the court were to conclude that a conflict exists between R & C's current representation of Travelers against Broan and its prior representation of Nortek and Nordyne, Broan has "waived the alleged conflict by its failure to raise the issue in a timely fashion." Specifically, Travelers argues that Broan has been aware of the conflict since November 1998, when R & C "advised [Hodan] that [R & C] would be unable to act as local counsel to Broan in the [*Colorpix v. Broan* cases] because" R & C "was involved in a matter on behalf of Travelers in which Broan was an adverse party." Travelers further argues that any prejudice to Broan caused by R & C's continued representation of Travelers is "far outweighed by the tremendous prejudice" that Travelers would endure in educating new counsel as to the facts and law of the case.

Broan responds that it did not have any knowledge of the conflict before May 2000, shortly before it filed the within motion. Specifically, Broan responds that Hodan did not know that R & C represented Broan in the *Reliance v. Scotsman* case and that Hodan did not inform Donnelly that R & C had a conflict with Broan.

■ Although "a party's delay in making a motion for disqualification may be given some weight" in determining whether to disqualify counsel, except in an "extreme" case of delay, "the court cannot act contrary to [the public's] interest [in maintaining an ethical legal system] by permitting a party's delay in moving for disqualification to justify the continuance of a breach" of the Rules of Professional Conduct. *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir.1973); *Schwed v. General Elec. Co.,* 990 F.Supp. 113, 117 (N.D.N.Y.1998) ("Ordinarily a law firm or an attorney may not rely upon laches to insulate it from disqualification.").

Here, even assuming that Broan was on notice of the conflict as early as November 1998, Broan's delay in filing the within motion to disqualify would be one and a half years. Broan filed the motion over six months before the case was scheduled to be trial ready. Travelers has provided no authority to support the proposition that such a delay is so "extreme" as to permit the court to allow a violation of the rules of professional conduct to continue. *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir.1973) (three year gap between filing of action and moving to disqualify not "extreme"); *Baird v. Hilton Hotel Corp.,* 771 F.Supp. 24, 28 (E.D.N.Y. 1991) (granting motion to disqualify filed five days before trial). In any event, Travelers has not "demonstrated that [Broan's] delay has caused them any prejudice." *Emle Indus., Inc. v. Patentex, Inc.,* 478 F.2d 562, 574 (2d Cir.1973). Accordingly, the court concludes that Broan has not waived the alleged conflict.

## CONCLUSION

For the foregoing reasons, Broan's motion to disqualify Robinson & Cole from continuing to represent Travelers in the within cases (document no. 34) is GRANTED.